# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHERARD MARTIN, | ) |
|         Plaintiff, | ) |
|     v. | ) No. 15-cv-04576 |
| CITY OF CHICAGO, DAVIS MARINEZ #15460, SOFIA GONZALEZ # 17298, ARMONDO CHAGOYA # 19938, ELVIS TURCINOVIC #13509, | ) |
|         Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, United States District Judge:

Defendants City of Chicago and Officers Davis Marinez, Sofia Gonzalez (Arellano), Armando Chagoya, and Elvis Turcinovic (collectively, "Defendants") have moved the Court for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. (R.36). For the reasons set forth below, the Court grants Defendants' motion.

## BACKGROUND

Plaintiff Sherard Martin ("Martin") commenced this action under 42 U.S.C. 1983 to redress alleged constitutional violations committed by Defendants. In particular, Martin alleges that Defendants illegally stopped him, falsely arrested him, and unlawfully searched his person and his vehicle. (R.1, Compl. ¶¶ 7-24). He brings claims for false arrest (Count I), unlawful search (Count II), and for *respondeat superior* liability against the City of Chicago (Count III), requesting a damage award "sufficient to compensate him for the injuries he suffered," in addition to punitive damages and fees and costs. (*Id.*). Acknowledging the existence of disputed factual issues related to Martin's initial stop and search claims, Defendants now seek partial

summary judgment on Martin's claims "related to their conduct *after* the Defendant Officers discovered narcotics and an illegal firearm in [Martin's] possession, which provided probable cause to arrest or to continue detaining [Martin] from that point forward." (R.37, Opening Br. at 2) (emphasis added). Martin opposes the motion but does not dispute any fact as set forth in Defendants' Local Rule 56.1(a)(3) statement. *See Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014) ("A party filing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure must file a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law") (citing L.R. 56.1(a)(3)). The relevant facts are as follows.

Around 7:00PM on May 24, 2013, Martin was driving near the intersection of E. 90th Street and S. Burley Avenue in Chicago, when Officers Marinez and Gonzalez pulled him over. (R.38, Rule 56.1(a)(3) Stmt. Facts ¶ 6). According to Martin, he had not committed any traffic violations prior to being pulled over. (*Id.*).[1] Office Gonzalez then approached Martin's car, requesting his driver's license and insurance. Martin could not produce his license, however, stating that he "had his license taken for a ticket." (*Id.* ¶ 7). Officers Gonzalez and Marinez then asked Martin to step out of his car, at which point Officers Turcinovic and Chagoya arrived. (*Id.* ¶ 8). According to Martin, the police officers forced him out of the car, handcuffed him, conducted a pat-down search of his person, and placed him inside a police vehicle. The officers then searched his car. (*Id.* ¶ 9).[2] During the search of Martin's car, the officers recovered a 9

---

[1] According to Defendants, Officers Marinez and Gonzalez pulled him over because the taillights and brake lights on his car were not working. (*Id.*).

[2] According to Defendants, when Martin stepped out of his car, the officers saw a gun between his legs and immediately placed him into custody. Officer Chagoya then searched Martin's car prior to impound, and found a plastic baggie containing crack cocaine and $400.00. (*Id.*).

mm semiautomatic handgun and a plastic baggie containing crack cocaine. (*Id.* ¶ 10). On scene, Officer Marinez noticed that the serial number on the handgun had been defaced. (*Id.*).

After searching Martin's car, the police officers transported him to the station for processing. At the police station, Officer Marinez printed Martin's rap sheet and discovered that he had previous convictions on felony charges for first-degree murder and unlawful use of a weapon by a convicted felon. (*Id.* ¶¶ 11-12). Martin was later transferred to the Cook County Jail, and charged with four felonies: (i) being an armed habitual criminal in violation of 720 ILCS 5/24-1.7(a); (ii) being a convicted felon in possession of a firearm in violation of 720 ILCS 5/24-1.1(a); (iii) being in possession of a firearm with a defaced serial number in violation of 720 ILCS 5/24-5(b); and (iv) being in possession of cocaine in violation of 720 ILCS 570/402. Martin also received traffic citations pursuant to Chicago Municipal Code Section 9-76-050 (relating to the operation of taillights) and 625 ILCS 5/6-112 (relating to the requirement to carry a driver's license). (*Id.* ¶¶ 11, 13).

Martin was incarcerated from May 24, 2013 through July 29, 2013 in connection with his May 24, 2013 arrest. (*Id.* ¶ 14).[3] During the course of criminal proceedings, Martin filed a motion to suppress the evidence, which the trial court granted on November 7, 2014. (*Id.*). As a result, the State dismissed the charges through a nolle prosequi motion. (*Id.*). Martin now seeks $65,000 in civil damages for his incarceration, calculated at a rate of $1,000 per day for 65 days (May 24, 2013 – July 29, 2013). He also seeks to recover lost business income of $700 per day for 65 days—a total of $45,500—in relation to his automobile dealership. (*Id.* ¶ 15). Defendants argue that such damages are not recoverable in this Section 1983 action.

---

[3] On July 29, 2013, a different court revoked Martin's bond after he was convicted in an unrelated criminal case. (*Id.*). He remained incarcerated in connection with that case.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining summary judgment motions, courts "must view the record in the light most favorable to the non-moving party and give the benefit of reasonable inferences to the non-moving party." *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted); *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 349 (7th Cir. 2015).

**ANALYSIS**

In his false arrest claim, Martin alleges that he "was stopped and seized without a warrant, without probable cause, and without reasonable suspicion" in violation of the Fourth and Fourteenth Amendments. (R.1, Compl. ¶ 16). He further alleges that he was "unlawfully and maliciously arrested . . . and wrongfully detained[.]" (*Id.* ¶ 17). His unlawful search claim, meanwhile, asserts that "Defendant Officers searched [his] person and his car without a search warrant and without probable cause to believe [he] was committing or had committed a crime" in violation of the Fourth Amendment. (*Id.* ¶ 20).

In seeking partial summary judgment, Defendants argue that Martin "can only proceed on his claim related to his brief detention on scene before the handgun and drugs were found, the

search of his person, and the search of his vehicle." (R.37, Opening Br. at 9).[4] According to Defendants, once the police officers discovered the handgun and cocaine in Martin's car, probable cause existed to arrest Martin, precluding him from recovering damages related to his 65-day incarceration on felony charges. After reviewing the summary judgment record and applicable precedent, the Court agrees.

## I.     The Existence of Probable Cause for Weapons and Drug-Related Offenses

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Where the underlying facts are undisputed in a false arrest case, the court can determine whether probable cause supported the arrest at the summary judgment stage. *See Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013).

Here, it is undisputed that, on May 24, 2013, Martin was in possession of an illegal handgun and cocaine in violation of various penal statutes, including 720 ILCS 5/24-1.7(a), 720 ILCS 5/24-1.1(a), 720 ILCS 5/24-5(b), and 720 ILCS 570/402. (R.38, Rule 56.1(a)(3) Stmt. Facts ¶¶ 9-10, 12-13). By failing to refute these facts (and Defendants' related arguments) in response to the present motion, Martin has effectively conceded that—once the Defendant Officers recovered contraband in his car—probable cause existed for his May 24, 2013 arrest. *See Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 679 (7th Cir. 2007) ("A police officer has probable cause to arrest an individual when the facts and circumstances that are known to him reasonably support a belief that the individual has committed, is committing, or is about to [ ] commit a crime").[5] The fact that Defendants only later learned about Martin's criminal history

---

[4] Defendants recognize that "Plaintiff's claims related to his initial stop, handcuffing, the search of his person, and the search of his vehicle" depend on "disputed facts." (R.52, Reply Br. at 1).

[5] In addition, Martin has developed no argument that "the initial seizure was the arrest, and not merely an investigatory detention," such that post-seizure observations "would not factor into the probable-cause inquiry." *See*

5

(as relevant to two of the felony charges) does not vitiate the probable cause determination, where the officers recovered on scene a handgun with a defaced serial number and a plastic baggie containing crack cocaine. *See id.* at 682 ("probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause"); *Abbott*, 705 F.3d at 715 ("an arrest can be supported by probable cause that the arrestee committed any crime, regardless of the officer's belief as to which crime was at issue").

Similarly, in this Section 1983 action, the fact that Martin prevailed on a suppression motion related to the initial traffic stop does not vitiate the probable cause determination with respect to the discovered contraband. The Seventh Circuit's recent opinion in *Vaughn v. Chapman* is instructive on this issue. In *Vaughn*, an Illinois state trooper stopped the plaintiff—a felon then living in Arizona—for purported traffic infractions while he was driving through Illinois. *See* No. 16-1065, 2016 WL 5944726, at *1 (7th Cir. Oct. 13, 2016). After learning that Vaugh "was driving on a suspended license and was wanted on a warrant from Wisconsin[,]" the trooper called for a drug-sniffing dog. Another Illinois state trooper then arrived, who—according to Vaughn—"'signaled' the dog to give a false alert so that the troopers would have an excuse to search the car." The troopers found a pistol in the trunk of the car. *Id.* They then took Vaugh to county jail and contacted Arizona authorities, learning that "Vaughn was suspected of committing an armed robbery and aggravated assault a few days earlier." *Id.* The state prosecutor later charged Vaught with possession of a firearm as a felon in violation of 720 ILCS

---

*Gutierrez v. Kermon*, 722 F.3d 1003, 1007 n.1 (7th Cir. 2013); *cf. Ramos v. City of Chicago*, 716 F.3d 1013, 1018 (7th Cir. 2013) ("The proliferation of cases in this court in which '*Terry*' stops involve handcuffs and ever-increasing wait times in police vehicles is disturbing, and we would caution law enforcement officers that the acceptability of handcuffs in some cases does not signal that the restraint is not a significant consideration in determining the nature of the stop").

5/24–1.1(a). *Id.* Vaughn remained in custody from August 2013 through December 2014, when the prosecutor dismissed his case to allow the Arizona prosecution to proceed. *Id.* Vaughn then brought suit against "everyone involved in the criminal case," including a claim against the individual troopers for malicious prosecution. *Id.* at *1-2.

In relevant part, the Seventh Circuit noted that, "[u]nder both federal and state law, the existence of probable cause is a complete defense to malicious prosecution[.]" *Id.* at *2 (citing *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009)). The Seventh Circuit then held:

> Here the troopers had discovered a firearm in the trunk of the car Vaughn was driving and learned from a records search that Vaughn is a felon. They also learned from authorities in Arizona that Vaughn was a suspect in an aggravated assault and armed robbery involving a weapon of the same caliber. This was sufficient [to establish probable cause].
>
> Although Vaughn alleges that this evidence was the fruit of an illegal search of the car, this would not undermine its relevance to the question of probable cause. The exclusionary rule does not apply in a § 1983 suit against police officers. *See Lingo v. City of Salem*, 832 F.3d 953, 958-959 (9th Cir. 2016); *Black v. Wigington*, 811 F.3d 1259, 1267-68 (11th Cir. 2016); *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999); *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997) . . . Thus, regardless of whether Troopers Chapman and Howell had justification for searching the trunk of the car that Vaughn was driving, their discovery established probable cause for the charge and thus defeated any claim of malicious prosecution. *See Johnson*, 575 F.3d at 664.

*Id.* at *2-3.

In this case, even assuming that the recovered contraband constituted "the fruit of an illegal search of [Martin's] car," such a fact does not "undermine its relevance to the question of probable cause." *See id.* In other words, "regardless of whether [the Defendant Officers] had justification for searching . . . the car that [Martin] was driving, their discovery established probable cause for the charge[s] and thus defeated any claim" of false arrest under Section 1983. *See id.* As other Circuit Courts have recognized, "The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant." *See Townes v. City of New*

7

*York*, 176 F.3d 138, 149 (2d Cir. 1999); *see also Lingo v. City of Salem*, 832 F.3d 953, 960 (9th Cir. 2016) (rejecting the suggestion that "probable cause to arrest may be supported only by information that was obtained in accordance with the Fourth Amendment"); *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) ("We now join our sister circuits and hold that the exclusionary rule does not apply in a civil suit against police officers"); *Hector v. Watt*, 235 F.3d 154, 157-61 (3d Cir. 2000) (same); *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997) (same).

District courts, too, have recognized that the exclusionary rule does not apply to Section 1983 claims. *See, e.g.*, *Williams v. Edwards*, No. 10 C 1051, 2012 WL 983788, at *5-7 (N.D. Ill. Mar. 22, 2012) ("The court concludes that the undisputed evidence of Williams's drug use and possession establishes probable cause for his ultimate arrest regardless of whether the initial stop was constitutionally valid"); *Dyson v. Vill. of Midlothian*, No. 12-CV-7632, 2015 WL 778850, at *7 n.7 (N.D. Ill. Feb. 18, 2015) ("While in a criminal case the 'fruit of the poisonous tree' doctrine might render the arrest in this case tainted by the possible constitutional infirmity of the initial stop, no such doctrine extends to civil cases for false arrest"); *Swanigan v. Trotter*, No. 7 C 4749, 2011 WL 658156, at *3 (N.D. Ill. Feb. 14, 2011) (same); *Colbert v. Willingham*, No. 13-CV-2397, 2015 WL 3397035, at *5 n.5 (N.D. Ill. May 26, 2015) (same); *Rivera v. Burke*, No. 06C0734, 2008 WL 345612, at *5 (N.D. Ill. Feb. 7, 2008) (same); *Bradshaw v. Mazurski*, No. 03 C 2074, 2004 WL 170337, at *6 (N.D. Ill. Jan. 15, 2004) (same); *Williams v. Carroll*, No. 08 C 4169, 2010 WL 5463362, at *4-5 (N.D. Ill. Dec. 29, 2010) (same); *Cannon v. Christopher*, No. 1:06-CV-267, 2007 WL 2609893, at *4 (N.D. Ind. Sept. 6, 2007) ("Several federal courts in the Seventh Circuit have adopted the *Townes* principle and applied it to dismiss cases where probable cause existed despite an allegation of an improper initial stop and search").

In this case, disputed facts exist with respect to the reasonableness of the initial stop and search of Martin and his car. If such conduct was unjustified, Defendants "may be liable for false arrest for an improper investigative detention[,]" *see Edwards*, 2012 WL 983788 at *7, and Martin may be entitled to nominal damages resulting from such Fourth Amendment violation. *See Townes*, 176 F.3d at 145 ("Here, the only actionable violations of that [Fourth Amendment] right are the stop of the taxicab and the associated seizure and search of Townes's person, which alone might at most support slight or nominal damages"). Based on the undisputed facts, however, probable cause existed to arrest Martin for weapons and drug-related offenses on May 24, 2013. The existence of probable cause "defeat[s] any claim" of false arrest following the contraband discovery. *See Vaughn*, 2016 WL 5944726 at *3; *Mustafa*, 442 F.3d at 547. Accordingly, Martin cannot "recover for his [65-day] incarceration before the charges against him were dropped." *See Edwards*, 2012 WL 983788 at *8; *see also Carroll*, 2010 WL 5463362 ("Having determined that probable cause emerged at least as early the discovery of the guns and I.D.s, there can be no recovery for false arrest under § 1983 after that point"); *Townes*, 176 F.3d at 149 ("Neither may Townes recover compensatory damages for his arrest and pre-arraignment detention . . . Ultimately, [his] only possible damage claim would be limited to the brief invasion of privacy related to the seizure and initial search of his person").

## II.     Martin's Response Brief

Instead of addressing authorities such as *Townes*, *Carroll*, and *Edwards*, Martin urges the Court to examine the damages available to a Section 1983 litigant—including for incarceration, legal fees, and/or emotional distress—by reference to principles of proximate causation. In particular, he argues: (i) that the Seventh Circuit's decision in *Kerr v. City of Chicago*, 424 F.2d 1134 (7th Cir. 1970), is dispositive and allows recovery here, as does a district court decision

9

from the District of New Mexico; and (ii) that, in any event, whether independent intervening actors—such as Martin himself—caused his incarceration damages is a question for the jury, not for summary judgment. Ultimately, however, Martin's arguments do not convince the Court to deviate from the above-discussed precedent.

    **A.**    *Kerr v. City of Chicago*

The Court first addresses the import of *Kerr v. City of Chicago*. In *Kerr*, the plaintiff alleged that the Chicago police had violated his constitutional rights by, *inter alia*, obtaining an involuntary confession through the use of physical force, and using that unlawful confession to detain him for 18 months. 424 F.2d at 1138. The Seventh Circuit observed, without further explanation, that "[a] plaintiff in a civil rights action should be allowed to recover the attorneys' fees in a state criminal action where the expenditure is a foreseeable result of the acts of the defendant." *Id.* at 1141. Given case law developments since the Seventh Circuit decided *Kerr* almost 47 years ago, and factual differences from *Kerr*, however, this Seventh Circuit statement does not convince the Court to deny partial summary judgment here.

In particular, *Kerr* does not address whether alleged damages resulting from detention or prosecution pursuant to a *lawful* arrest—*i.e.*, where probable cause supported the arrest—are recoverable in a Section 1983 false arrest action. *Contra id.* at 1140 ("an arrest without a warrant and without probable cause [is] unlawful"). To the contrary, Seventh Circuit precedent supports that such damages are not recoverable—as a matter of law—insofar as "[p]robable cause is a bar to claims of false arrest under 42 U.S.C. § 1983[.]" *Huon v. Mudge*, 597 F. App'x 868, 877 (7th Cir. 2015); *Holmes*, 511 F.3d at 679-80 ("If the officer had probable cause to believe that the person he arrested was involved in criminal activity, then a Fourth Amendment

10

claim for false arrest is foreclosed").⁶ Without a showing of liability on a false arrest theory *following* the contraband discovery, the Court need not determine Martin's corresponding entitlement to damage recovery. *Contra Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988) ("A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations").

In this case, the existence of probable cause defeats any claim for compensatory damages for Martin's arrest and pre-arraignment detention.⁷ *See Townes*, 176 F.3d at 149. As the Second Circuit observed in *Townes*:

> Although the common law tort of false arrest (or false imprisonment) allows plaintiffs to seek damages from "the time of detention up until issuance of process or arraignment, but no[] more," Keeton et al., *supra,* § 119, at 888, the existence of probable cause defeats any such claim. The individual defendants here lacked probable cause to stop and search Townes, but they certainly had probable cause to arrest him upon discovery of the handguns in the passenger compartment of the taxicab in which he was riding… Ultimately, Townes's only possible damage claim would be limited to the brief invasion of privacy related to the seizure and initial search of his person.

*Id.* (citation omitted). The Court finds this reasoning both persuasive and applicable. Given the Seventh Circuit's positive citation of *Townes* in *Vaughn*, *see* 2016 WL 5944726 at *3, the Court

---

⁶ As the Supreme Court has explained, the tort of false imprisonment remedies a "sort of unlawful detention" – specifically, one "without legal process." *See Wallace v. Kato*, 549 U.S. 384, 389 (2007). The tort of malicious prosecution, meanwhile, remedies unlawful detention stemming from the wrongful *institution* of legal process – beginning, for example, when the individual "is bound over by a magistrate or arraigned on charges." *Id.* at 389-90; *see also Serino v. Hensley*, 735 F.3d 588, 594 (7th Cir. 2013) ("when the arrest takes place without a warrant, the plaintiff only becomes subject to legal process afterward, at the time of arraignment"). Martin has not asserted a malicious prosecution claim here.

⁷ As the Seventh Circuit has recognized, *even if* an arrest lacks probable cause, an individual seeking relief under a false arrest theory "is entitled to recover only for injuries suffered from the time of arrest until his arraignment." *Wallace v. City of Chicago*, 440 F.3d 421, 425 (7th Cir. 2006), *aff'd sub nom. Wallace v. Kato*, 549 U.S. 384 (2007) (citing *Wiley v. City of Chicago*, 361 F.3d 994, 998 (7th Cir. 2004 ("[W]e have held that the scope of a Fourth Amendment claim is limited up until the point of arraignment") *and Gauger v. Hendle*, 349 F.3d 354, 362-63 (7th Cir. 2003) ("[T]he interest in not being prosecuted groundlessly is not an interest that the Fourth Amendment protects")). As noted above, Martin has not asserted a malicious prosecution claim based on post-arraignment conduct. Even if he had, "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for . . . malicious prosecution." *See Mustafa*, 442 F.3d at 547.

declines to interpret *Kerr* as setting forth a broad rule that "a plaintiff whose constitutional rights have been violated . . . is entitled to recover damages for incarceration, legal fees, and/or for emotional distress caused by an unlawful detention or search." (R.46, Response Br. at 7).

### B. *Train v. City of Albuquerque*

The Court acknowledges, nonetheless, a district court decision from the District of New Mexico, which held that a plaintiff who raises a "constitutional claim based on [an] illegal search" may be entitled to recover damages for post-indictment proceedings, assuming that the constitutional deprivation proximately caused the asserted damages. *See generally Train v. City of Albuquerque*, 629 F. Supp. 2d 1243 (D.N.M. 2009) ("*Train II*"). In so concluding, the *Train* court looked to the Tenth Circuit's guidance "about the interests that the Fourth Amendment protects," including "liberty, property, and privacy interests—a person's sense of security and individual dignity." *Id.* at 1252 (citing *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001)). The district court then reasoned:

> According to the Tenth Circuit's guidance on the Fourth Amendment, any damage award available for a Fourth-Amendment violation under 42 U.S.C. § 1983 should be tailored to compensating losses of liberty, property, privacy, and a person's sense of security and individual dignity. While it may not be an evil to uncover crime, the drafters obviously did not think uncovering crime was a higher value than protecting and securing a person's home from unreasonable searches. Federal criminal charges, federal detention, and all of the negative consequences of those charges and attendant to federal custody implicated Train's interest in liberty and his sense of security and individual dignity. That imprisonment occasioned economic losses. Such losses should be compensable, given that they implicate the interests that the Tenth Circuit has explained the Fourth Amendment protects.

*Id.* The *Train* court further noted the existence of "evidence from which a reasonable jury might infer that the Defendants' actions proximately caused" such damages. *Id.* at 1253, 1255.

After reviewing applicable precedent, however, the Court declines to follow the reasoning in *Train*. As an initial matter, the *Train* court deemed itself "not bound to adhere to

12

the common-law contours" of the tort of false arrest, insofar as the plaintiff had brought a "constitutional claim based on [an] illegal search" rather than a Section 1983 false arrest claim. *See id.* at 1255; *see also Train v. City of Albuquerque*, No. CIV08-0152JB/RLP, 2009 WL 1330095, at *2 (D.N.M. Apr. 13, 2009) ("*Train I*") ("Train brought this lawsuit in state court for violations of his rights under the Fourth Amendment to the United States Constitution. The Defendants filed a notice of removal, removing this case to federal court"). Here, by contrast, Martin has plainly brought a Section 1983 false arrest claim. (R.1). Accordingly, the Court is bound by precedent such as *Gauger v. Hendle*, 349 F.3d 354, 362-63 (7th Cir. 2003), limiting available damages "to the harm [the criminal defendant] incurred from the false arrest before he was charged." *See Gauger v. Hendle*, 349 F.3d 354, 362-63 (7th Cir. 2003) (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994), *Townes*, 176 F.3d at 145-48, and *Hector*, 235 F.3d at 157-61), *abrogated on other grounds by Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006). Indeed, in this case, the existence of probable cause to arrest means that Martin cannot recover even for *pre*-indictment damages following the contraband discovery. *See Townes*, 176 F.3d at 149. The *Train* court, by contrast, did not purport to examine whether probable cause existed to arrest the plaintiff following the discovery of a firearm in his apartment. *See Train I*, 2009 WL 1330095 at *10 ("Ultimately, Pettit and Simmons did not have a sound basis to conduct a warrantless search of the apartment"); *Train II*, 629 F. Supp. 2d at 1246 ("The Court has already found that the search of Train's apartment was unlawful and granted summary judgment in Train's favor on that issue"). For these reasons, *Train* is not instructive here.

Furthermore, although the district court in *Train* rejected a series of "policy arguments" regarding the non-compensability of post-indictment damages stemming from an unlawful

search, *see Train II*, 629 F. Supp. 2d at 1253-54, more recent Circuit Court cases have entertained and affirmed such arguments. As the Ninth Circuit, for example, recently observed:

> "[I]n a § 1983 suit, the need for deterrence is minimal. Here, application of the exclusionary rule would not prevent the State from using illegally obtained evidence *against* someone, but instead would prevent state actors merely from *defending themselves* against a claim for monetary damages. Exclusion of evidence in this context would not remove any preexisting incentive that the government might have to seize evidence unlawfully. It would simply increase state actors' financial exposure in tort cases that happen to involve illegally seized evidence. In effect, § 1983 plaintiffs would receive a windfall allowing them to prevail on tort claims that might otherwise have been defeated if critical evidence had not been suppressed. Even if such application of the rule might in some way deter violative conduct, that deterrence would impose an extreme cost to law enforcement officers that is not generally countenanced by the doctrine.

*Lingo*, 832 F.3d at 958–59. The Eleventh Circuit, too, recently observed:

> The cost of applying the exclusionary rule in this context is significant: officers could be forced to pay damages based on an overly truncated version of the evidence. And the deterrence benefits are miniscule. Police officers are already deterred from violating the Fourth Amendment because the evidence that they find during an illegal search or seizure cannot be used in a criminal prosecution—the primary "concern and duty" of the police. Moreover, plaintiffs can still sue a police officer for the illegal search or seizure, regardless whether the officers can rely on illegally obtained evidence to defend themselves against other types of claims. This threat of civil liability will adequately deter police officers from violating the Fourth Amendment, whether or not the exclusionary rule applies in civil cases.

*Black v. Wigington*, 811 F.3d at 1268 (citations omitted). The Seventh Circuit, in turn, has cited both *Lingo* and *Black* with approval. *See Vaughn*, 2016 WL 5944726 at *3.

In the Section 1983 context, "the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question." *Carey v. Piphus*, 435 U.S. 247, 258-59 (1978). In this case, Martin invokes his Fourth Amendment right to be free from unreasonable searches and seizures. A disconnect exists, however, between the alleged constitutional violation and the injury for which Martin now seeks a recovery – that is, his 65-day incarceration on felony charges. In view of this disconnect, the Court agrees with the reasoning of *Townes*: "Victims of unreasonable searches

14

or seizures may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *See Townes*, 176 F.3d at 148; *accord Hector*, 235 F.3d at 157 ("the damages incurred in [the post-indictment legal] process are too unrelated to the Fourth Amendment's privacy concerns") (discussing *Carey*). Although the Seventh Circuit has not expressly adopted this principle regarding compensability, courts in this District have applied it. *See, e.g.*, *Carroll*, 2010 WL 5463362 at *4-5; *Edwards*, 2012 WL 983788 at *7-8. Given this reasoning, and given the Seventh Circuit's positive citation of *Townes* and *Hector* in *Gauger* and *Vaughn*, the Court is likewise persuaded. Accordingly, the Court declines to follow the reasoning set forth in *Train*.

### C. The Proximate Cause Inquiry

Contrary to Martin's suggestion, moreover, the Court need not undertake a causation analysis in determining the present motion.[8] Although the *Train* court left the proximate cause inquiry to the jury, it did so in light of disputed "evidence." In relevant part, the *Train* court held:

> The parties in this case dispute causation. Train has evidence of injuries, including legal costs, lost wages, and emotional distress, which a reasonable jury might find were a foreseeable consequence of the constitutional deprivation and which would not have occurred absent the constitutional deprivation. A reasonable jury might infer from the evidence that the constitutional deprivation proximately caused Train's asserted losses. On the other hand, Simmons and Pettit have evidence that other parties, including possibly Train himself, his criminal defense attorney, and the grand jury that returned an indictment against him, proximately caused the asserted injuries. In light of the evidence, the Court believes proximate cause in this case is appropriately left to a jury.

---

[8] Even applying traditional causation principles, it seems that—while "ordinary principles of tort causation" apply with respect to Martin's initial stop and search claims—the "fruit of the poisonous tree doctrine is not available to elongate the chain of causation" with respect to his false arrest claim *following* the contraband discovery, including his $110,500 damage claim for a 65-day incarceration. *See Townes*, 176 F.3d at 146; *see also id.* ("allowing this and other § 1983 actions to proceed solely on a fruit of the poisonous tree theory of damages . . . would distort basic tort concepts of proximate causation"); *accord Edwards*, 2012 WL 983788 at *7 (noting the same).

15

*See Train II*, 629 F. Supp. 2d at 1253. In this case, however, regardless of whether an "intervening judgment" by a judge or grand jury broke the causal chain between Defendants' conduct and Martin's 65-day incarceration, Martin "is foreclosed from recovery for a second, independent reason: the injury he pleads (a violation of his Fourth Amendment right to be free from unreasonable searches and seizures) does not fit the damages he seeks (compensation for his [incarceration])." *See Townes*, 176 F.3d at 146-47; *see also Hector*, 235 F.3d at 161 ("Given that the cases on intervening causes are legion and difficult to reconcile . . . and that we have other, sufficient grounds for resolving this case, we will not reach the issue of intervening causation"). Following the reasoning of *Townes* and *Hector*—which the *Train* court explicitly declined to follow—the Court does not reach the issue of intervening causation.

Accordingly, the Court grants Defendants' motion for partial summary judgment. While Martin's Section 1983 case may proceed as to the initial stop and search of his person and car on May 24, 2013—before Defendants' discovery of the illegal firearm and crack cocaine—he may not seek damages based on Defendants' post-discovery conduct, including damages related to his 65-day incarceration. *See Townes*, 176 F.3d at 149 ("Ultimately, Townes's only possible damage claim would be limited to the brief invasion of privacy related to the seizure and initial search of his person"); *see also Edwards*, 2012 WL 983788 at *8 ("while Williams might be entitled to damages for harm he suffered as a result of being unlawfully removed from the car at gunpoint, he would not be able to recover for his fourteen-month incarceration before the charges against him were dropped"); *Carroll*, 2010 WL 5463362 at *5 ("Having determined that probable cause emerged at least as early the discovery of the guns and I.D.s, there can be no recovery for false arrest under § 1983 after that point").

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for partial summary judgment. (R.36).

Dated: January 5, 2017

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge